BOWKER FERTILIZER COMPANY *vs.* BANCROFT H. WALLINGFORD

Androscoggin.     Opinion October 7, 1920.

*Action to recover for fertilizer sold. Implied warranty. Express warranty.*
*Guaranty.     Opinion enunciated in Philbrick* v. *Kendall, 111 Maine,*
*198 adhered to.*

*Held:*

1. In an action brought to recover the purchase price of fertilizer, proof of defendant's own experience with fertilizers obtained from other sources is too uncertain, speculative and conjectural to throw any real light upon percentages of the ingredients of the fertilizer purchased.

2. Such evidence alone, when the fertilizer is sold on percentage basis, is not sufficient to support defense to action brought to recover the price of the fertilizer.

This an action to recover the purchase price of about fifteen tons of fertilizer. The defendant filed the general issue and a brief statement. The plaintiff made out a prima facie case by showing a purchase, delivery, and non-payment. At the conclusion of the opening by counsel for the defense, the court ruled that if the facts alluded to in the opening by counsel for defense, were proved, it would not constitute a legal defense to the action, and directed a verdict for the plaintiff, and the jury rendered a verdict for the plaintiff for $633.89. To which ruling the defendant excepted, and the pleadings of the defendant were made a part of the exceptions. Exceptions overruled.

Case stated in the opinion.

*Harry Manser*, for plaintiff.

*Tascus Atwood*, for defendant.

SITTING: CORNISH, C. J., HANSON, PHILBROOK, WILSON, JJ.

PHILBROOK, J. This case is before us upon defendant's exceptions to a directed verdict against him. The action was brought to recover the purchase price of fertilizer sold to and used by the defendant. In his bill of exceptions he admits that the plaintiff made out a prima facie case by showing a purchase, delivery, and non-payment. He also admits that samples of the fertilizer were taken at the factory

from the same bins from which fertilizer was taken to be shipped to him; that the samples were analyzed by the Maine Agricultural Experiment Station; that the certificate of analysis showed 4-6-10, which was in accordance with the formula printed upon the bags and barrels containing the fertilizer sold him; and that the plaintiff had otherwise complied with State regulations.

The pleadings, made part of the bill of exceptions, in addition to the general issue, contain the following brief statement: "That while not denying the execution of the written contract described in the plaintiff's writ, yet nevertheless the plaintiff should not have judgment against him, the said defendant, in any sum whatever, because he says that the fertilizer or potato manure, so called, described in the plaintiff's writ was deficient in the elements necessary to aid him in the growing of a crop of potatoes and was in fact a very great damage to him, causing him to have a crop of very inferior and unmarketable potatoes whereby he sustained damages largely in excess of the amount of the plaintiff's claim, to wit, to the amount of seven hundred dollars ($700) or more; and he further alleges that said inferior, unmarketable potatoes were the result of the use of said fertilizer or potato manure, so called, and was in no way attributable to the quality of the soil or the method of planting or the care that the said potato crop had at his hands."

Presumably in support of this defense, counsel for defendant stated in his opening to the jury that he would offer evidence to show that the fertilizer was used on twelve acres of land side by side with two acres of land on which other fertilizer was used, mixed by the defendant to conform to the same formula of 4-6-10; that the same seed was used on the two acres where the defendant furnished the fertilizer as was used on the twelve acres where he claims to have gotten poor results; that evidence would be offered that the character of the soil of the two acres was the same as that of the twelve acres; that the same spraying was done on the two acres as on the twelve acres; that the same methods of cultivation were used on the two acres as on the twelve acres, and the same amount of cultivation; and that the treatment from beginning to end of the seed and the following movements connected with the contemplated crop were the same on the two acres as on the twelve acres; and that a splendid crop of potatoes was raised on the two acres, and on the twelve acres the crop proved to be wet and soggy and unmarketable, there being no claim but what the quantity on the twelve acres was approximately

the same in proportion to the acreage. The court ruled that if the evidence alluded to in counsel's opening were proved, it would not constitute a legal defense to the action, and ordered judgment for the plaintiff. This order is the basis of defendant's exceptions.

The contract referred to in defendant's brief statement is not contained in the record. Neither is the declaration in plaintiff's writ, nor any testimony offered under it, made a part of the case. Hence we have no direct means of knowing whether the plaintiff agreed to sell and the defendant agreed to pay for a fertilizer which contained certain percentages of ammonia, available phosphoric acid and potash, or whether the agreement was one in which the plaintiff guaranteed suitableness of the fertilizer or favorable results from its use. The two agreements are essentially different and certain evidence admissible to prove one would be inadmissible to prove the other. The rules of admissibility of evidence under these two con‑tracts are clearly discussed in a recent decision of this court, *Armour Fertilizer Works* v. *Logan,* 116 Maine, 33, where it was held that proof of defendant's own experience was too uncertain, speculative or con‑jectural to throw any real light upon the percentages of the ingredients of the fertilizer, and that such evidence is inadmissible when the fertilizer was sold only on a guaranteed analysis basis. On the other hand, it was held in the same case that such evidence is undoubtedly admissible when the sale was accompanied by a guaranty of suitable‑ness or results. If the sale in this case was upon a guaranteed analysis basis only, the evidence offered by the defense was inadmis‑sible; if upon guaranty of suitableness or results, it was admissible. Hence, it becomes important, before defendant's exceptions can prevail, for him to show that this sale was of the latter character. In his brief statement is to be found the claim that the fertilizer "was deficient in the elements necessary to aid him in the growing of a crop of potatoes." We think a fair interpretation of these words conveys the idea that the defendant was intending to defend on the ground that the fertilizer was deficient in the percentages of ammonia, available phosphoric acid and potash. If this was the intended defense, and not a failure of guaranty of suitableness or results, then the ruling excluding evidence of experience was correct.

But the defendant urges that he was deprived of having the jury pass upon the question of fact whether or not the fertilizer that he bought was reasonably suited to the purposes for which he bought it, and he invokes the familiar principle that when anything is bought

for a specific purpose there is an implied warranty that it is reasonably fit for that purpose, it being admitted in the bill of exceptions that plaintiff's agent had knowledge that the fertilizer furnished the defendant was to be used for raising potatoes. In *Philbrick* v. *Kendall*, 111 Maine, 198, the court at nisi prius instructed the jury in these words: "I cannot give you the instruction that when a man buys a fertilizer, as this plaintiff bought it in the market, by name, 4-6-10 for instance, that there is no accompanying implied warranty that fertilizer will fertilize . . . . .There may be an express warranty with those brands which contain the preparation of the three different elements, the tag or stamp on them, but there is also going along with them, I.instruct you, an implied contract that they are reasonably fit and suitable for the use to which they are to be put, and to which.the seller knows they are to be put. . . . In this case, if you find that the defendants knew that this fertilizer was to be used for fertilizing potatoes, and that their customers throughout the state would buy it for that purpose, that it was ordered by the buyers for a special purpose known to the sellers,and if so there is an implied warranty that it was reasonably fit and suitable for the purpose for which it was ordered or sold. . . . It is not confined to a guarantee of just such a percent of one element, and such of another, and such of another, but there is an implied warranty that the whole mixture, as a mixture, is reasonably adapted to the purpose."

These instructions in the case from which it is quoted exactly state the contention claimed by the defendant in the case at bar, but this court held that the instructions were incorrect and sustained exceptions. We adhere to the opinion enunciated in that case. So far as the record in the instant case discloses the sale was for fertilizer of a 4-6-10 brand and nothing .more. The defense offered was excluded in accordance with legal principles recently enunciated by this court and which we belive are not only sound in law but also well grounded in public policy. Should the opposite rule obtain then every crop failure, regardless of the causes for the same, might subject the sellers of fertilizer to litigation upon grounds not contemplated at the time of the sale, and our farm dwellers might thus make the fertilizer business so precarious in this State as soon to drive that valuable commodity from the market.

*Exceptions overruled.*